**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-0461-WJM

VERONICA ELIAS,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE'S DECISION AND
REMANDING TO THE COMMISSIONER**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Veronica Elias ("Plaintiff") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for disability

and social security benefits.  The denial was affirmed by an administrative law judge

("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security

Act ("Act").  This appeal followed.

For the reasons set forth below, the ALJ's denial of benefits is reversed and the

case is remanded to the Commissioner for rehearing.

**I. BACKGROUND**[1]

Plaintiff Veronica Elias was age 39 at the time this appeal was filed.  (ECF No.

---

[1] The following background focuses only on Plaintiff's medical history which is relevant
to the Court's analysis, *i.e.* Plaintiff's diabetes and resultant neuropathy in her hands and feet.
The Court omits all discussion of Plaintiff's mental health history as well as any discussion of
her physical conditions other than diabetes and neuropathy.

1.)  She has a high school diploma and one year of college education.  (R. at 149, 188.)

Plaintiff was in prison from 2005 to 2007 for child neglect and, following her release,

lived in a halfway house for three years.  (R. at 34-42.)  Plaintiff now lives on her own in

a one bedroom apartment.  (R. at 38.)

On July 29, 2009, Plaintiff filed for disability insurance benefits alleging that she

has been disabled since April 30, 2009 due to "numb[ness in her] arms and hands,

swollen feet, diabetes, hernia, blurry vision, bipolar disorder, [post-traumatic stress

disorder], and anxiety."  (R. at 183.)  At the time of her application, Plaintiff was 5' 4" tall

and weighed 256 pounds.  (R. at 182-83.)

Plaintiff has long suffered from diabetes.  In July 2008, Plaintiff sought treatment

for leg pain and was diagnosed with neuropathy.  (R. at 203-05.)  During the time period

relevant to this application, Plaintiff did not have a treating physician that she visited

regularly for her diabetes care or medication management.

In conjunction with her application for benefits, Plaintiff had a physical evaluation

conducted by Laura Moran, D.O. on March 16, 2010.  (R. at 273-77.)  During this

examination, Plaintiff complained of numbness in her hands and feet and informed Dr.

Moran that she has difficulty with fine motor manipulation.  (R. at 273.)  Dr. Moran found

that Plaintiff had full range of motion in her hands and feet and full strength.  (R. at 274-

75.)  Dr. Moran also found that Plaintiff "has signs and symptoms consistent with

diabetic neuropathy."  (R. at 276.)  Dr. Moran concluded that Plaintiff "could stand and

walk for a few minutes at a time, not to exceed a half-hour per day because of diabetic

neuropathy in her feet for a total of eight hours per day.  She can lift and carry about 5

pounds due to diabetic neuropathy in her hands."  (*Id.*)  Dr. Moran also concluded that

Plaintiff "would probably have difficulty doing repetitive motions with her hands." (*Id*.)

Plaintiff's application for benefits was denied on April 9, 2010.  (R. at 13.)

Plaintiff filed a written request for hearing on May 13, 2010 before an Administrative

Law Judge.

On May 25, 2011, Administrative Law Judge Marsha Stroup held a hearing on

Plaintiff's application for benefits.  (R. at 30-68.)  At the hearing, Plaintiff testified that

her diabetes was under control and that she had recently finished classes on how to eat

properly for her diabetes.  (R. at 48.)  Plaintiff stated that she had numbness in her

finger and feet that has been coming and going for a few years.  (*Id*.)  When Plaintiff

has numbness in her hands, she is unable to hold a coffee cup, brush her teeth, or

wash her hair.  (R. at 48.)  Plaintiff's hands are also very cold.  (R. at 49.)  Plaintiff

reported that she is generally able to maintain her one bedroom apartment and can

sweep and mop on her own and do her own dishes.  (R. at 55-56.)  However, Plaintiff

can only pick up laundry if it is "very, very light" and has trouble completing tasks like

making the bed when experiencing numbness in her hands because they "start getting

really like weak."  (R. at 52, 56.)  Plaintiff is unable to carry her own grocery bags

because of the numbness in her hands.  (R. at 53.)

Plaintiff also testified that she had recently obtained two jobs—one as a

dishwasher and one as an associate at McDonald's.  However, while working as a

dishwasher, her hands were numb and she repeatedly dropped things.  (R. at 62-63.)

Plaintiff was fired from McDonald's because she couldn't focus and was "dropping

stuff".  (R. at 63.)

Vocational expert James Z. Hardway also testified at the hearing.  (R. at 64.)

The ALJ asked Mr. Hardaway to look at the hypothetical situation of someone who was limited to "sedentary work; no extremes in temperature; nothing that requires the use of foot controls; she can do frequent handwork but not constant; no hazardous working conditions; we'd be looking at unskilled work; I think no work with the public; and brief superficial coworker interaction." (R. at 65-66.)  Mr. Hardaway opined that someone with these restrictions could work as a document preparer, addresser, and a cutter/paster press clippings.  (R. at 66.)  Mr. Hardaway then testified that, if the hypothetical claimant's ability to do hand work was reduced to occasional, there would be only one job that a person could do—a surveillance system monitor.  (R. at 68.)

On the June 28, 2011, ALJ Stroup issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2009, the alleged onset date.  (R. at 15.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, posttraumatic stress disorder, anxiety disorder, hernia, obesity, and diabetes mellitus.  (R. at 16.)  At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments listed in the social security regulations.  (R. at 16.)  At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

---

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

unskilled, sedentary work that did not require use of foot controls, did not involve extreme temperatures, hazardous working conditions, or interaction with the public. The RFC also limited Plaintiff to "frequent, but not constant" handwork and brief and superficial contact with coworkers. (R. at 18-19.) The ALJ found that, with this RFC, Plaintiff could not perform any of her past relevant work. (R. at 24.) At step five, the ALJ found, given Plaintiff's age, education, work experience, and RFC, that there were jobs in significant numbers in the national economy that Plaintiff could perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, was not entitled to benefits.

The Appeals Counsel declined Plaintiff's request for review of ALJ Stroup's decision. (R. at 1-5.) Thus, ALJ Stroup's June 28, 2011 decision is the final administrative action for purposes of review.

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision on Plaintiff's entitlement to disability benefits to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may

neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## III.  ANALYSIS

On appeal, Plaintiff raises three issues: (1) the ALJ improperly weighed the credibility of Plaintiff's testimony; (2) the ALJ's hypothetical questions to the Vocational Expert were improper; and (3) the ALJ's finding that there were a "significant number" of jobs in the national economy that Plaintiff could perform was error.  (ECF No. 14.)  Because the Court finds that the ALJ's RFC was not supported by substantial evidence, which formed the basis for the hypothetical question asked of the Vocational Expert, and that this error requires remand, it will address this argument first.

## A.    RFC Not Supported by Substantial Evidence

Plaintiff contends that the ALJ's hypothetical question was error because it did not reasonably reflect Plaintiff's impairments.  (ECF No. 14 at 9.)  Because the hypothetical was based on the ALJ's RFC assigned to Plaintiff, the Court construes this argument as challenging whether the ALJ's RFC properly accounted for Plaintiff's impairments.

The RFC is an assessment of the most a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).  The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record."  *Id.*  Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements.  Soc. Sec. Ruling (SSR) 96–8p (July 2, 1996).

An ALJ must make specific RFC findings based on all of the relevant evidence in

the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR

96–8p, 1996 WL 374184, at *5 (July 2, 1996).

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion, citing
> specific medical facts . . . and nonmedical evidence . . . the
> adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular
> and continuing basis . . . and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record.  The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

SSR 96–8p.  The ALJ's findings regarding the RFC must be supported by substantial

evidence.  *See Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999).

In this case, the ALJ's RFC is as following:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined in
> 20 CFR 404.1567(a) and 416.967(a) except she cannot
> work in extreme temperatures.  The claimant is not able to
> perform work that requires the use of foot controls.  The
> claimant is able to perform frequent, but not constant,
> handwork.  The claimant cannot work in hazardous working
> conditions.  The claimant should be limited to unskilled work.
> The claimant cannot work with the public.  The claimant can
> have brief and superficial interaction with coworkers.

(R. at 19.)  The only aspect of the RFC that the Plaintiff challenges is the ALJ's

determination that she was able to perform "frequent, but not constant, handwork."

(ECF No. 14 at 9.)

With respect to Plaintiff's ability to use her hands, the ALJ found as follows:

> The claimant does experience symptoms that are
> associated with her diabetes.  The claimant has reported

tingling in her hands and feet (Hearing testimony & Exhibit 8F). There is also some evidence that the claimant has experienced some decrease in her fine motor skills. All of these symptoms began prior to the claimant changing in her diet and becoming more compliant with her medication. It is unclear how the claimant's improved habits will affect her symptoms in the future, but it is reasonable to conclude that it will be a positive impact. However, since the claimant continues to experience numbness in her extremities, the undersigned has included manipulation and hazardous condition limitation in the residual functional capacity. The claimant's activities of daily living, including her continued ability to care for her home, suggests that she maintains the ability to perform a significant amount of handwork. Therefore, the undersigned finds that restrictions that are more limiting would be inconsistent with the record.

(R. at 20.) As discussed below, the Court finds that there is not substantial evidence to

support these conclusions.

First, there is no support in the record for the ALJ's conclusion that Plaintiff's

neuropathy in her hands is likely to improve based on increased compliance with her

diabetes medication and improvements to her diet. The ALJ herself notes that it is

"unclear" what effect Plaintiff's behavior changes will have on her neuropathy but then

finds it "reasonable to conclude that it will be a positive impact". The ALJ cites no

evidence in the record supporting this "reasonable conclusion" and the Court is unable

to locate any. As such, the Court finds that there is not substantial evidence to support

the ALJ's finding that Plaintiff's neuropathy is likely to improve. *See Pinnt v. Chater*,

988 F. Supp. 1354, 1360 (D. Colo. 1997) ("Although the ALJ is entitled to draw

reasonable inferences, his presumptions, speculations and suppositions should not be

substituted for evidence.") (citing Soc. Sec. Rep. Serv., Rulings 1983-1991) (West

1992)).

Additionally, the record does not support the ALJ's finding that Plaintiff's daily activities show that she could perform "a significant amount of handwork".  While Plaintiff testified that she was generally able to maintain her own one bedroom apartment, she consistently stated that the numbness in her hands made every activity difficult.  (R. at 56.)  For example, when she experiences the numbness, Plaintiff cannot hold a coffee cup, brush her teeth, or wash her hair.  (R. at 48.)  Plaintiff also testified that she has a friend accompany her to the grocery store because the numbness in her hands does not permit her to carry the bags.  (R. at 52-53.)  The fact that Plaintiff can make her bed, prepare simple foods, and generally keep her house clean—on her own time and at her own pace—is not substantial evidence showing that she could do frequent handwork at the request of, and on the time line required by, an employer.

The only medical evidence that could seemingly contradict Plaintiff's subjective complaints of neuropathy in her hands is the consultative physician's finding that Plaintiff has full range of motion in her hands, and that they had full strength.  (R. at 275-76.)  However, this evidence is not actually contradictory to Plaintiff's complaints. Plaintiff complains of numbness in her hands, not loss of range of motion. With respect to the strength in her hands, Plaintiff testified that her hands tired quickly and that she frequently dropped things.  This is consistent with Plaintiff's position that her neuropathy is not constant; rather it "comes and goes".  (R. 48.)  Thus, the fact that Plaintiff has full range of motion and strength in her hands is not substantial evidence for the ALJ's finding that Plaintiff could do frequent handwork.

The consultative physician diagnosed Plaintiff with "decreased sensation from her proximal forearms distally bilaterally consistent with diabetic peripheral neuropathy."

(R. at 276.) She also found that Plaintiff could not walk or stand more than thirty minutes per day due to diabetic neuropathy in her feet and that she "would probably have difficulty doing repetitive motions with her hands." (*Id.*) This medical evidence supports greater restrictions on Plaintiff's ability to perform handwork than were prescribed by the ALJ in her RFC.

Additionally, Plaintiff testified that she had a job working as a dishwasher at a restaurant but that her hands prevented her from doing the job well and that she dropped things. (R. at 62-63.) Plaintiff also worked for a short time at McDonald's but was let go because she couldn't focus and was dropping things. (R. at 63.) The ALJ did not address this evidence in finding that Plaintiff could do a job that required frequent handwork.

In sum, there is no evidence supporting the ALJ's contention that Plaintiff's neuropathy is likely to improve with her behavior changes. The record contains, at best, a scintilla of evidence contradicting both the medical evidence of neuropathy and Plaintiff's testimony regarding its effect on her daily activities and her prior job history. Accordingly, the Court finds that there is not substantial evidence to support the ALJ's RFC that Plaintiff could perform "frequent" handwork. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971) (substantial evidence is more than a scintilla, less than a preponderance). Because there is not substantial evidence to support the ALJ's RFC with respect to Plaintiff's ability to do frequent handwork, the ALJ's decision is reversed and this case is remanded to the Commissioner for further proceedings.

**B.     Remaining Arguments**

Plaintiff raises two additional issues related to the sufficiency of the underlying

proceedings.  Because the Court finds that the ALJ's RFC was not supported by

substantial evidence and that this error alone requires remand, it need not address the

other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th

Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to

address other issues raised on appeal).

The Court expresses no opinion as to Plaintiff's other arguments and neither

party should take the Court's silence as tacit approval or disapproval of how the

evidence was considered.  It is entirely possible that, given the passage of time and the

positive manner in which it appeared Plaintiff's life was changing as of the hearing

before the ALJ (*e.g.,* Plaintiff's weight loss, compliance with diabetes medication and

diet, etc.), the ALJ could arrive at the same conclusion and find that Plaintiff is not

disabled.  The Court does not intend by this opinion to suggest the result that should be

reached on remand; rather, the Court encourages the parties, as well as the ALJ, to

consider the evidence and the issues anew.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED

and this case is REMANDED to the Commissioner for rehearing.

Dated this 1st day of March, 2013.

BY THE COURT:

William J. Martínez
United States District Judge